UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

TONY D. JACKSON,

Petitioner,

v.

JAMES H. BRUTON, Warden,

Respondent.

Civil No. 01-1761 (DSD/SRN)

**REPORT AND RECOMMENDATION**

Tony D. Jackson, Minnesota Correctional Facility - Oak Park Heights, 5329 Osgood Avenue North, Stillwater, Minnesota, 55082-1117, Petitioner, pro se.

Jay A. Brunner, First Assistant County Attorney, Washington County Attorney's Office, 14949 62nd Street North, P.O. Box 6, Stillwater, Minnesota, 55082, for Respondent.

SUSAN RICHARD NELSON, United States Magistrate Judge

This matter is before the undersigned Magistrate Judge of the District Court on the petition of Tony D. Jackson for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent has filed a return, (Docket No. 13), contending that the petition should be dismissed. The matter has been referred to the undersigned for report and recommendation under 28 U.S.C. § 636 and Local Rule 72.1(c). For the reasons discussed below, the Court concludes that Petitioner's habeas corpus petition should be DISMISSED WITH PREJUDICE.

## I. BACKGROUND

In March 1998, a Washington County jury found Petitioner guilty of entering a woman's home and raping her. He was convicted on charges of first degree criminal sexual conduct, first degree burglary, second degree assault, and false imprisonment. He

FILED SEP 0 6 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

was later sentenced to 182 months in prison for his criminal sexual conduct conviction, which was a "double durational departure." In other words, his sentence was twice as long as the term called for by the state sentencing guidelines. He also received a 48-month sentence for his burglary conviction, to be served consecutively to his other sentence. Petitioner is presently serving his sentences at the Minnesota Correctional Facility at Oak Park Heights.

The crimes for which Petitioner was convicted occurred on the night of May 4, 1997, in a suburban neighborhood east of St. Paul. While the victim was home alone, a man came to her door and asked whether he could use the telephone. After the victim let the man in, he put a gun to her head and threatened to kill her. He then took her to a bedroom, gagged her, handcuffed her hands behind her back, and sexually assaulted her several times.

Approximately two weeks later, Petitioner was stopped by the police for driving at night with his headlights turned off. Petitioner agreed to let the police search his car, and they found a fanny pack, which (unbeknownst to the police at the time) was similar to one that had been worn by the rapist. The police also found a gun and a set of handcuff keys. Petitioner was arrested, but soon released.

A few days later, another rape occurred in another suburban St. Paul neighborhood, and Petitioner quickly became a suspect. A search warrant was issued for Petitioner's home, and the police discovered several pieces of evidence that tended to incriminate him. Fingerprint evidence showed that Petitioner had been in the homes of both of the recent rape victims, and DNA obtained from sperm cells at both crime scenes matched Petitioner's DNA.

After Petitioner was convicted,[1] a newspaper reported that the jury had conducted a fingerprint experiment during deliberations. According to the paper, (as well as a subsequent affidavit by one of Petitioner's defense lawyers), one juror had some reservations about the reliability of the prosecution's fingerprint evidence. Another juror suggested that the doubting juror should examine the fingerprint evidence under a magnifying glass. Other members of the jury allegedly made their own fingerprints with ink that apparently was available in the jury room, so that the fingerprint evidence introduced at trial could be compared to other prints. The one "hold-out" juror then allegedly accepted the fingerprint evidence, and agreed to vote for conviction.

Upon learning of the jury's alleged fingerprint analysis, Petitioner asked the trial court to conduct a special hearing to determine whether his trial had been affected by jury misconduct. The trial court judge denied that request.

After the trial and sentencing were completed, Petitioner filed a direct appeal. He argued that (1) the trial court erred by imposing a double durational departure sentence, and by imposing consecutive (rather than concurrent) sentences, and (2) the trial court erred by failing to conduct a special jury misconduct hearing. The Court of Appeals rejected both of those arguments, (as well as several other arguments raised in a separate pro se brief), and affirmed Petitioner's convictions and sentences. State v. Jackson, 596 N.W.2d 262 (Minn.App. 1999). The Minnesota Supreme Court denied Petitioner's request for further review on August 25, 1999. (Id.)

---

[1] Petitioner was tried for both of the rapes, but he was convicted only for the first one. The jury was unable to reach a verdict on the charges stemming from the later crime.

In November 2000, Petitioner filed a post-conviction motion in the trial court, which presented several claims, including: (1) that he had received ineffective assistance of counsel on appeal; (2) that he had been deprived of his constitutional right to a fair trial by reason of adverse pre-trial publicity of his case; (3) that his sentence was unconstitutional, because it was based on facts decided by a judge, rather than a jury; (4) that the jury had not been properly instructed on the subject of lesser-included offenses; and (5) that he had been prejudiced, and denied due process, by the victim's in-court identification of him. The trial court denied the post-conviction motion, and Petitioner took another appeal.

The Minnesota Court of Appeals summarily rejected most of Petitioner's post-conviction claims, because they had been, or could have been, raised on direct appeal. Jackson v. State, No. CX-01-36 (Minn.App. 2001), 2001 WL 800039 (unpublished opinion) at *1-2, rev. denied, September 11, 2001. The only two post-conviction claims that the Court of Appeals addressed on the merits were the ineffective assistance of appellate counsel claim, and the claim that Petitioner's sentence was based on facts not determined by the jury. The Court of Appeals considered and rejected both of those claims on the merits, and the Minnesota Supreme Court again denied Petitioner's request for further review. (Id.)

On September 25, 2001, Petitioner filed his current habeas corpus petition, which lists four grounds for relief:

(1) that Petitioner's constitutional rights were violated by reason of the jury's alleged fingerprint "experiment;"

(2) that Petitioner's sentence constitutes "cruel and unusual punishment;"

(3) that Petitioner's conviction was based on evidence obtained by an

unconstitutional search and seizure; and

(4) that "the D.N.A. analysis was unconstitutional" and "the fingerprint analysis was unconstitutional."

(Petition, [Docket No. 1], pp. (5)-(6), § 12.)

For the reasons discussed below, the Court finds that Petitioner is not entitled to a writ of habeas corpus on any of these claims.[2]

## II. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") prescribes the standards that govern this Court's review of habeas corpus petitions filed by state prisoners. The relevant portion of the AEDPA, 28 U.S.C. § 2254(d), provides that:

> "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

---

[2] Petitioner's memorandum in support of his petition alludes to another possible claim, namely that he was deprived of his constitutional right to a fair trial by reason of adverse pre-trial publicity. If Petitioner intended to raise such a claim, (even though it is not mentioned at all in the petition itself), it must be summarily rejected on the grounds of procedural default, because it was never fairly presented to, and decided on the merits by, the Minnesota state appellate courts. (See discussion of procedural default principles at pp. 11-12, infra.)

In Williams v. Taylor, 529 U.S. 362 (2000), the United States Supreme Court discussed the meaning of this statute, and how it should be applied by the federal district courts. The Supreme Court recognized that

> "a state-court decision can be 'contrary to' this Court's clearly established precedent in two ways. First, a state-court decision is contrary to this Court's precedent if the state court arrives at a conclusion opposite to that reached by this Court on a question of law. Second, a state-court decision is also contrary to this Court's precedent if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours."

Id. at 405.

> "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."

Id. at 413.

The Court also explained that

> "A federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable.... [¶] [A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."

Id. at 409, 411 (emphasis added).

A writ of habeas corpus may also be available where the state courts' resolution of a prisoner's criminal case is "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). In other words, habeas relief can be granted if the conviction is based on findings of fact that could not reasonably be derived from the evidentiary record. When reviewing a state court

decision, however, "a federal court... presumes that the state court's factual determinations are correct," and that presumption "may be rebutted only by clear and convincing evidence." Lee v. Gammon, 222 F.3d 441, 442 (8th Cir. 2000).

Needless to say, a federal district court is not allowed to conduct its own de novo review of a prisoner's constitutional claims. Habeas relief cannot be granted unless the prisoner has identified, and substantiated, a specific error committed by the state courts. Moreover, he must show that the state courts committed the type of error that is actionable under § 2254(d), as that statute has been interpreted by the Supreme Court in Williams.

## III. DISCUSSION

### A. Jury Misconduct Claim

Petitioner initially contends that he is entitled to a writ of habeas corpus because of the independent fingerprint analysis allegedly performed by the jury during the course of deliberations. The state courts rejected Petitioner's jury misconduct claim because they found no wrongdoing in what the jury allegedly did. As explained by the Minnesota Court of Appeals:

> "Even assuming the accuracy of the newspaper story [regarding the jury's alleged fingerprint activities], the jury merely tested the credibility of certain evidence by examining it. The jury did not use or consider evidence that had not been received in the trial.... In inking their own fingers the jurors were merely conducting a confirmatory comparison to test the conclusion that all fingerprints differ. This was not juror misconduct."

Jackson, 596 N.W.2d at 266 (citation omitted).

Petitioner has made no effort to explain how the Court of Appeals' analysis is contrary to, or involves an unreasonable application of, any U.S. Supreme Court decision. Indeed, Petitioner has not cited any Supreme Court cases pertaining to this issue in either

his petition or in the memorandum offered in support of his petition.

The only federal case that Petitioner has cited in support of his jury misconduct claim is United States v. Hall, 116 F.3d 1253 (8th Cir. 1997), cert. denied, 522 U.S. 1140 (1998). That case is readily distinguishable, however, because in Hall the Court's analysis assumed that the jury had improperly examined "factual evidence not developed at trial." Id. at 1255. In Hall, the Court did not analyze whether any jury misconduct had actually occurred, (again, that was simply assumed); instead, the Court considered only whether the defendant had been prejudiced by the jury's (assumed) misconduct.

In the present case, the state courts did not address the prejudice issue that was dispositive in Hall, because they made a threshold determination that the jury never improperly used or considered any evidence that had not been received during the trial. Jackson, 596 N.W.2d at 266. In other words, the state courts never reached the prejudice issue, because they found no jury misconduct in the first place. Petitioner has failed to explain how, in his case, the state courts' resolution of the underlying misconduct issue, (as opposed to the prejudice issue discussed in Hall), is contrary to, or involves an unreasonable application of, any Supreme Court case law.

While this Court is not aware of any Supreme Court decisions that are directly on point here, it appears that the state courts' resolution of Petitioner's jury misconduct claim is wholly consistent with lower federal court decisions. In United States v. Callahan, 442 F.Supp. 1213 (D. Minn. 1978) (Devitt, J.), rev'd on other grounds, 596 F.2d 759 (1979), the Court held that "'jurors must be given enough latitude in their deliberations to permit them to use common experiences and illustrations in reaching their verdict,'" and that "[j]uror experiments are proper where they are not extraordinary and are within the bounds of the

evidence." Id. at 1226, quoting United States v. Hephner, 410 F.2d 930, 936 (7th Cir. 1969). In Banghart v. Origoverken, A.B., 49 F.3d 1302, 1306-07 (8th Cir. 1995), our Court of Appeals found no jury misconduct where jurors used matches and toothpicks to conduct an experiment on a stove that had been introduced into evidence. The Court agreed with the district judge's determination that "'the test conducted by the jury was simply part of the process of evaluating the evidence introduced at trial by subjecting certain... evidence to greater scrutiny.'" Id. at 1307 (quoting the district court judge's unpublished opinion).

As Callahan and Banghart clearly indicate, jurors are not precluded from carefully analyzing physical evidence presented at trial. Moreover, their analysis of the evidence can properly include simple tests and experiments, such as the fingerprint analysis at issue here. Thus, the Court can find no error in the state courts' adjudication of Petitioner's jury misconduct claim that meets the AEDPA standards for granting federal habeas corpus relief.

B. Sentencing Error Claim

Petitioner's second habeas claim, pertaining to his sentence, appears to be a three-part claim: (1) the trial court abused its discretion by imposing the double durational departure for the criminal sexual conduct conviction, (2) the trial court erred by sentencing Petitioner as a "patterned sex offender" without receiving any expert evidence showing that Petitioner is likely to re-offend, and (3) Petitioner's sentence was based on factual determinations made solely by a judge, (rather than a jury), in violation of the principles discussed by the United States Supreme Court in Apprendi v. New Jersey, 530 U.S. 466

(2000).[3] For the reasons discussed below, the Court finds Petitioner's sentencing arguments to be unavailing.

**(i) Double durational departure and patterned sex offender claims**

Petitioner's first two challenges to his sentence, pertaining to the double durational departure and his patterned sex offender status, must be dismissed for lack of constitutional dimension. "With the exception of due process claims, state prisoners' claims of error involving sentencing... are matters governed by state law that are not cognizable in federal habeas proceedings." Martin v. Solem, 801 F.2d 324, 331 (8th Cir. 1986). See also Estelle v. McGuire, 502 U.S. 62, 67 (1991) (state court rulings on state law issues are not subject to federal habeas review). In his first two challenges to his sentence, Petitioner has not even alleged, much less demonstrated, that the trial court committed any constitutional error at sentencing. (The only constitutional sentencing error raised in the current petition is the alleged Apprendi error, discussed below.) In the first two sentencing claims, Petitioner contends merely that the state courts misapplied the state sentencing guideline laws and the state patterned sex offender law. Because Plaintiff has not explained how those alleged sentencing errors violated his right to due process, or any

[3] In the petition itself, Petitioner claims that his sentence constitutes "cruel and unusual punishment," (which, if substantiated, would violate his rights under the Eighth Amendment). This claim must be summarily rejected for two reasons. First, Petitioner never raised a "cruel and unusual punishment" argument in the state courts, which means that he is procedurally barred from raising such a claim in a federal habeas corpus petition. See McCall v. Benson, 114 F.3d 754, 757 (8th Cir. 1997) ("before we may reach the merits of a habeas petition, we must first determine whether the petitioner has fairly presented his federal constitutional claims to the state court"). Second, Petitioner has not identified any United States Supreme Court case suggesting that his sentence violates the Eighth Amendment. See Simmons v. State of Iowa, 28 F.3d 1478, 1482 (8th Cir. 1994), (state "legislatures have expansive discretion in fixing the terms of confinement that courts are to impose on those convicted of statutory crimes"), cert. denied, 513 U.S. 1178 (1995).

other federal constitutional right, he cannot be granted a federal writ of habeas corpus based on those alleged errors.

Moreover, even if Petitioner intended to claim that his sentence violates the due process clause, that claim could not be entertained at this time, because no such constitutional claim was previously raised in the state courts. McCall v. Benson, 114 F.3d at 757 (a habeas petitioner's sentencing claim cannot be considered by a federal court where the petitioner, in his direct appeal, "challenged his sentence solely on state law grounds"). It is evident from the Minnesota Court of Appeals' discussion of Petitioner's sentencing claims that he did not rely on any federal constitutional principles when he challenged his sentence in his state court appeals, but rather, his claims were based solely on state statutes and state case law. The Court of Appeals' decision makes no reference to due process or any other constitutional principle. State v. Jackson, 596 N.W.2d at 266-67. Because Petitioner did not challenge his sentence on due process grounds in the states courts, (with the exception of the Apprendi claim discussed below), he cannot do so here.

Furthermore, any constitutional challenge to Petitioner's sentence based on an alleged misapplication of the sentencing guidelines or the patterned sex offender statute has been procedurally defaulted, because it is now too late to present such a challenge in state court. See McCall, 114 F.3d at 757, ("Minnesota law provides that once the petitioner has directly appealed his sentence 'all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for postconviction relief'"), citing State v. Knaffla, 243 N.W.2d 737, 741 (Minn. 1976); Roby v. State, 531 N.W.2d 482, 484 (Minn. 1995). Because of Petitioner's procedural default, this Court is precluded from

entertaining any constitutional claim based on an alleged misapplication of the guidelines or the patterned sex offender statute, unless Petitioner could show either sufficient cause and prejudice to overcome his procedural default, or proof of his actual innocence. McCall, 114 F.3d at 758, citing Coleman v. Thompson, 501 U.S. 722, 750 (1991). Petitioner has made no attempt to satisfy either the cause and prejudice requirement or the actual innocence requirement, and the Court finds no reason to believe that he might be able to do so. Thus, even if Petitioner were attempting to raise some constitutional claim based on an alleged misapplication of the guidelines or the patterned sex offender statute, any such claim would be dismissed on the grounds of procedural default.[4]

**(ii) Apprendi claim**

In his state post-conviction action, Petitioner argued that his sentencing violated the due process principles established by the Supreme Court in Apprendi. He apparently is

---

[4] In his most recent submissions in this matter, Petitioner implores the Court to hold oral arguments, or conduct an evidentiary hearing, so he can attempt to prove that he was wrongly sentenced as a patterned sex offender. Petitioner contends that he can now show that the prosecution and the trial court conspired to sentence him under the patterned sex offender statute, even though they knew (or should have known) that there was no evidence to support such a sentencing. According to Petitioner, the trial court could not properly sentence him under the patterned sex offender statute, because there was no expert evidence showing that he is likely to re-offend. However, even if Petitioner could identify some constitutional dimension to this claim, it would still fail, because the sentencing transcript shows that Petitioner would have received the same sentence even if the patterned sex offender statute had never been considered. (Respondent's Return, [Docket No. 13], "Appendix D: Felony Sentencing Transcript dated April 22, 1998," pp. 23-24.) Furthermore, the state Court of Appeals later upheld Petitioner's sentence based solely on the sentencing guidelines -- i.e., without regard to the patterned sex offender statute. Jackson, 596 N.W.2d at 266-67. Therefore, even if Petitioner could prove that the patterned sex offender statute was inapplicable due to a lack of expert evidence, his sentence would be upheld as a proper application of the state sentencing guidelines. Because Petitioner has not shown that oral argument or an evidentiary hearing would serve any useful purpose, it will be recommended that his latest request for an in-court hearing, (Docket No. 20), be denied.

attempting to raise the same claim here.

In Apprendi, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. In other words, a jury, rather than a judge alone, must make the factual determinations (beyond a reasonable doubt) on any issue, other than the existence of prior convictions, which causes a defendant to receive a sentence greater than the statutory maximum for the charged offense. Petitioner apparently believes that his sentences were based on factual determinations that should have been made by a jury, rather than the trial judge alone, and that his sentences should therefore be vacated pursuant to Apprendi.

Petitioner's claims based on Apprendi must be summarily dismissed because Apprendi was decided after Petitioner's case became final on direct appeal, and the constitutional principles that were first announced in Apprendi are not retroactively applicable on collateral review. As a general rule, new constitutional rules of criminal procedure announced by the Supreme Court are not applicable to other cases that have already become final on direct review. Teague v. Lane, 489 U.S. 288, 310 (1989) ("[u]nless they fall within an exception to the general rule, new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced"). New constitutional principles, such as those explained in Apprendi, cannot support a collateral challenge to a conviction or sentence, except in rare situations where the new ruling is specifically held to be retroactively applicable pursuant to Teague.

In United States v. Moss, 252 F.3d 993, 996 (8th Cir. 2001), cert. denied, 122 S.Ct. 848 (2002), our Court of Appeals held, very explicitly, that Apprendi is not retroactively

applicable to collateral proceedings. Following an exhaustive analysis and application of the retroactivity principles set forth in Teague, the Court of Appeals concluded that Apprendi is not retroactively applicable, because it did not announce a "watershed rule of criminal procedure." Moss, 252 F.3d at 998. The Court of Appeals expressed its ruling in simple and unequivocal terms: "Teague bars petitioners from raising Apprendi claims on collateral review." Id. at 997. See also Jarrett v. United States, 266 F.3d 789, 791 (8th Cir. 2001) (acknowledging Moss's holding that "Apprendi was not a decision of such 'watershed magnitude' that it would apply retroactively on collateral review"), cert. denied, 122 S.Ct. 1582 (2002); Murphy v. United States, 268 F.3d 599 (8th Cir. 2001) (reaffirming that Apprendi is not retroactively applicable on collateral review), cert. denied, 122 S.Ct. 1189 (2002); Sexton v. Kemna, 278 F.3d 808, 814, n. 5 (8th Cir. 2002) (applying Moss's non-retroactivity ruling to state habeas petitioner's Apprendi claim), pet. for cert. filed, July 29, 2002 (No. 02-15). Because Apprendi is not retroactively applicable, Petitioner's Apprendi-based claims cannot be entertained in the present habeas corpus proceeding.[5]

---

[5] Even if Apprendi were retroactively applicable, Petitioner's Apprendi claims would still be denied. In Petitioner's post-conviction action, the Minnesota state courts determined that Apprendi's principles are not applicable to his case, because, under Minnesota's state sentencing laws, Petitioner's sentence did not exceed the statutory maximum for his crimes. Jackson, 2001 WL 800039 at *2 ("[a]ssuming for the sake of argument that Apprendi may be applied retroactively, the district court did not violate Apprendi because [Petitioner's] sentence, although double the presumptive sentence, did not exceed the statutory maximum penalty for first degree criminal sexual conduct"). The state courts' interpretation and implementation of Minnesota's state sentencing laws is not subject to review in federal court. Davidson v. Bowersox, 288 F.3d 1076, 1078 (8th Cir. 2002) ("[i]t is not within the prerogative of a federal habeas court to question a state court's interpretation of its state's law"), pet. for cert. filed, July 8, 2002, (No. 02-5600). Therefore, Petitioner could not be granted federal habeas corpus relief based on Apprendi, even if that case were retroactively applicable.

C. Search and Seizure Claim

In his third ground for relief, Petitioner claims that his convictions should be overturned because they were based on evidence that the police obtained by conducting a constitutionally impermissible search of his car. Although he does not deny that he consented to the search, Petitioner claims that his consent was invalid, and that the search was therefore unconstitutional, because the police did not give him a "Miranda warning" before obtaining such consent.

Assuming, without deciding, that Petitioner's Miranda claim can properly be addressed on the merits here,[6] the claim must be rejected for the simple reason that the police were not required to give Petitioner a Miranda warning before obtaining permission to search his car. It is well-settled that the Miranda warning is intended to afford protection only against self-incriminating statements, and that giving a consent to search is not, by itself, a self-incriminating statement for Miranda purposes. Cody v. Solem, 755 F.2d 1323, 1330 (8th Cir.) ("[s]imply put, a consent to search is not an incriminating statement"), cert. denied, 474 U.S. 833 (1985). See also United States v. Rodriguez-Garcia, 983 F.2d 1563, 1568 (10th Cir. 1993) ("[c]onsenting to a search is not 'evidence of a testimonial or communicative nature' which would require officers to first present a Miranda warning"); United States v. Crabtree, No. 401 CR 154SNLMLM (E.D.Mo. 2001) 2001 WL 1863538 at *15 ("[b]ecause requesting consent to search is not likely to elicit an incriminating statement, such questioning is not 'interrogation' and thus Miranda warnings are not

---

[6] It is not clear whether Petitioner's Miranda claim was fully and fairly presented to the state courts; if not, the claim would be procedurally defaulted and not subject to federal habeas review.

required"). Therefore, Petitioner is clearly not entitled to a writ of habeas corpus on his third claim for relief.[7]

D. DNA and Fingerprint Claim

In his fourth and final ground for relief, Petitioner claims that his constitutional rights were violated by the admission of DNA and fingerprint evidence at his trial. This claim has several fatal defects.

First, Petitioner's DNA/fingerprint claim is defective because it is wholly unexplained. To state an actionable habeas corpus claim, a petitioner "must allege sufficient facts to establish a constitutional claim. Mere conclusory allegations will not suffice." Wiggins v. Lockhart, 825 F.2d 1237, 1238 (8th Cir. 1987), cert. denied, 484 U.S. 1074 (1988). Petitioner has not described any of the facts on which his DNA/fingerprint claim is based, nor has he offered any legal arguments in support of his claim. He has not described the specific evidence he is challenging, and he has made no effort to explain why he believes such evidence was constitutionally inadmissible. Habeas relief cannot be granted on the basis of "very general and conclusory" allegations, such as those presented here. Id.

Furthermore,"[q]uestions relating to the admissibility of evidence are matters of state law and are generally not cognizable in an action for habeas corpus." Wood v. Lockhart,

---

[7] It should be noted that Petitioner is barred from challenging the search of his car (or his home or his person) on other grounds, (i.e., on grounds unrelated to the alleged lack of a Miranda warning), by Stone v. Powell, 428 U.S. 465 (1976). There, the Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim [footnote omitted], a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Id. at 482. The record in this case shows that Petitioner had ample opportunities to raise search and seizure claims at various points during his state court proceedings. He is therefore barred by Stone from raising such claims here.

809 F.2d 457, 459 (8th Cir. 1987), citing Maggitt v. Wyrick, 533 F.2d 383, 385 (8th Cir.), cert. denied, 429 U.S. 898 (1976). Although Petitioner broadly claims that the admission of DNA and fingerprint evidence was "unconstitutional," he has made no effort to substantiate that assertion. Petitioner has failed to explain why the admissibility of the evidence in question is not a matter of state law, to be resolved by application of Minnesota's state rules of evidence. Because there is no apparent constitutional basis for Petitioner's DNA/fingerprint claim, it is not subject to federal habeas corpus review.

Finally, even if there were some constitutional dimension to Petitioner's DNA/fingerprint claim, Petitioner has failed to explain why he believes the claim was wrongly resolved by the Minnesota state courts. More specifically, he has failed to explain why he believes the state courts' resolution of the claim was contrary to, or involved an unreasonable application of, any decision of the U.S. Supreme Court. For this additional reason, he is not entitled to writ of habeas corpus on his final claim for relief.

## IV. RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1. Petitioner's "Motion Asking This Court To Reconsider Its Order Denying Oral Arguments," (Docket No. 20), be DENIED; and

2. Petitioner's application for habeas corpus relief under 28 U.S.C. § 2254, (Docket No. 1), be DISMISSED WITH PREJUDICE.

Dated: September 5, 2002

Susan Richard Nelson
SUSAN RICHARD NELSON
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this report and recommendation by filing with the Clerk of Court and serving all parties, within ten days after being served with a copy thereof, written objections which specifically identify the portions of the proposed findings, recommendations or report to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief with ten days after service thereof. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.